IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEO PRIETO, | ) | CASE NO. 4:08 CV 1631 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| RICH GANSHEIMER, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## Introduction

Before me by referral[1] is the *pro se* petition of Leo Prieto for a petition of habeas corpus under 28 U.S.C. § 2254.[2]  Prieto is incarcerated at the Lake Erie Correctional Institution, serving a sentence of 11 years for felonious assault and improperly discharging a firearm into a habitation.[3]  This sentence was imposed after his conviction at a bench trial in 2007 in Mahoning County.[4]

Prieto asserts the following three grounds for relief: (1) insufficient evidence, (2) ineffective assistance of counsel, and (3) sentencing error by trial court.[5]

---

[1] ECF # 3.

[2] ECF # 1.

[3] *Id.* at 1.

[4] *Id.*

[5] *Id.* at 2.

In response, the State argues that sufficient evidence supports Prieto's conviction and that, viewing the evidence in the light most favorable to the State, he has not met his burden of establishing that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."[6]  Second, the State argues that Prieto's counsel was not constitutionally defective simply because certain alibi witnesses failed to testify or because Prieto's counsel failed to paint a more positive picture of his client.[7]  Finally, the State argues that no sentencing error occurred because the trial court did not rely on impermissible facts at sentencing and because other considerations also justify Prieto's sentence.[8]

In response to the State's arguments, Prieto filed a traverse in which he essentially reasserts the claims made in his habeas petition.

As more fully developed below, I recommend finding that the State's positions are well-taken with respect to grounds one and two, where the state appeals court correctly identified and applied federal law.  With respect to ground three, I recommend finding that ground three be dismissed or, in the alternative, denied.

---

[6] ECF # 6 at 12-13, quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

[7] *Id.* at 18, 22.

[8] *Id.* at 23.

# Facts

**A.      Underlying facts and state trial**

The facts, as set forth by the court of appeals,[9] are as follows:

On May 18, 2005 at nearly 1:00 a.m., the residences at 1341 and 1343 Berwick Avenue on the East Side of Youngstown were subjected to a barrage of gunfire from assault rifles. Sixteen-year-old Shylinda McBride was shot once through her lower leg, requiring surgery to repair bone. She resided at the 1341 address with her mother and grandmother while two of her brothers lived next door at the 1343 address.

Based on the victim's statement that Leo Prieto shot her, appellant was indicted for one count of felonious assault, two counts of improper discharge of a firearm into a habitation (one for each residence), and three gun specifications. Also charged were Henry Scott and Lamont Williams. Appellant's case proceeded to a bench trial on October 3, 2006.

Ms. McBride testified that she was sitting in the livingroom listening to music and studying for a test when the broken front door blew open. When she got up to close it, she looked over towards her brothers' house next door. She saw a person named Henry Scott and another unknown person holding "big" guns. They were running across the street as they started shooting at her brothers' house. (Tr. 25).

Before ducking back into her house, she looked forward, and in the light of a streetlight, she saw appellant walking across the street. (Tr. 25, 28). She testified that he was wearing a black hooded sweatshirt, black sweat pants and a hat. (Tr. 29). When asked about any unusual characteristics, she stated that appellant has "eyes that go different ways." (Tr. 33-34). She testified that appellant stopped, looked at her strangely, pulled a big gun out from behind his back and began firing at her house. (Tr. 29). She figured he fired approximately fifteen or sixteen shots and that she was hit with the third or fourth shot.

---

[9] Facts found by the state appellate court on its review of the record are presumed to be correct. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).  *Accord*, *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

She limped down the hall screaming for her mother and exclaiming that Leo Prieto shot her. (Tr. 31). Her mother called 911 relating that her house was under fire and that her daughter had been shot. When the operator asked the identity of the shooters, the mother answered "Leo Prieto and them." The mother testified confirming that her daughter had immediately stated that Leo Prieto shot her. (Tr. 104). The mother also disclosed that she has known appellant for twenty years as he was once friends with her oldest children. (Tr. 107).

Lenny Vaughn, one of the victim's brothers who lived at the 1343 address, testified that he had received a telephone call earlier that day threatening that his house would be shot up by Leo Prieto and others. (Tr. 131-132). He stated that when he returned home from the store, he was worried because he saw a truck belonging to Lamont Williams in the driveway of Leo Prieto's mother, a few streets over. (Tr. 131, 133). He noted that the truck had not been there when he left for the store.

Vaughn related that he exited the vehicle in his driveway and spotted Leo Prieto rushing toward the house. (Tr. 134-135). Appellant was said to be wearing a black hooded sweatshirt, black jogging pants and gold eyeglasses. He was said to be dressed just as he had been when Vaughn saw him earlier that day, except that Vaughn did not believe appellant was still wearing his hat. (Tr. 155).

Vaughn ran in the house and yelled for his brother to get the guns. (Tr. 137). He explained that they had pistols for which they had just purchased bullets due to the threat earlier that day. (Tr. 147). Before any guns could be retrieved, gunfire erupted around them forcing them to take cover. (Tr. 137, 160). Vaughn admitted that he did not tell police that he saw appellant approaching his house until he was negotiating a plea in his own case the next year. (Tr. 164).

The detective assigned to the shooting testified that the victim told him that Leo Prieto shot her the first time he talked to her when he called her in the hospital some hours after the shooting. (Tr. 174, 180). He explained that the victim picked appellant out of a photographic array the next day. He disclosed that the victim was initially hesitant in picking out his photograph, that she kept looking at her mother, and that she finally stated, "but, Momma, you know he shot me." (Tr. 180).

The defense called the patrolman who first responded to the scene. He was dispatched at 12:52 a.m. for the shooting which occurred at 12:50 a.m. (Tr. 212). His report stated that the victim had been walking through the house when she heard gunshots and felt pain in her leg. (Tr. 215). (A paramedic's report had a similar recitation of events. (Tr. 239).) When the responding officer was asked why his report listed the suspect as a black male with black hair around twenty years old, he advised that he made up these characteristics because there are certain fields that must be filled in or the computer will provide an error message. (Tr. 217). He insisted that neither the victim nor the mother advised him of the suspect's name or that the victim was an eyewitness.

Notably, the victim had testified that she did not remember speaking to a police officer on the scene. (Tr. 35). The victim's mother had testified that she barely spoke to the officer as she was too busy seeing her daughter off in an ambulance and assisting her disabled mother who was almost shot in her bed. (Tr. 112). She also implied that she was hesitant to name Leo Prieto due to his status as a long-time family friend.

The defense also called appellant's mother, Donna Copeland, to the stand. She identified her cellular telephone records, which showed that she placed calls to appellant's cell phone numerous times throughout that night/morning. Most calls were one minute long, which she attributed to her hanging up on his voice mail.

Ms. Copeland testified that she heard the gunshots from Berwick Avenue, a few streets over. She immediately called appellant to ensure his safety. Although her records show only a one-minute call to appellant at 12:51 a.m., she stated that she had a conversation with him. He allegedly told her that he heard the gunshots, he was "out the way", he was at his wife's mother's house one street over, and he would see her tomorrow. (Tr. 267-268, 304-305). Ms. Copeland reasoned that appellant could not have been the shooter because she could hear the gunshots in her neighborhood but could not hear any over the telephone while she was speaking to her son. (Tr. 282).

The court took the case under advisement. The next day, the court came on the record and specifically explained its thought process and credibility determinations. The court found appellant guilty of felonious assault, improper discharge regarding the house containing the victim and the two accompanying firearm specifications. However, the court found appellant not guilty of improper discharge regarding the other house. On January 9, 2006, the court

sentenced appellant to eight years on each count to run concurrently plus an additional three years for the merged firearm specifications.[10]

**B.     Direct appeal**

Represented by different counsel,[11] Prieto filed a timely appeal, raising three assignments of error:

1.      Leo Prieto was denied his state and federal constitutional rights to due process and a fair trial when the trial court entered a judgment of conviction against him in the absence of sufficient evidence to support the conviction. Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, Sections 5 and 16, Article I of the Ohio constitution.

2.      Prieto was deprived of his right to the effective assistance of trial counsel, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.

3.      The trial court erred in considering facts not presented at trial in making his sentencing determinations.[12]

The state appellate court rejected these assignments of error and affirmed the judgment of the trial court.[13]

Prieto appealed this decision to the Ohio Supreme Court, asserting the following propositions of law:

---

[10] *State v. Prieto*, No. 05CR497, 2007 WL 4696815, at *1 (Ohio Ct. App. Dec. 21, 2007).

[11] Prieto was represented at trial by Dennis DiMartino and on appeal by Daniel Jones (*See*, ECF # 1 at 11-12).

[12] ECF # 6 at 5.

[13] *Prieto*, 2007 WL 4696815, at **3-10.

1.      A criminal defendant is denied his state and federal constitutional rights to due process and a fair trial when the trial court at a bench trial, after wondering aloud whether to believe the only eyewitness to an alleged felonious assault, entered a judgment of conviction against the defendant in the absence of sufficient evidence to support the conviction.

2.      A criminal defendant is deprived of his right to the effective assistance of trial counsel, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution, where his trial counsel fails to call available alibi witnesses and denigrates his client at the sentencing hearing.

3.      The trial court in a criminal trial errs when it mistakenly relies upon facts at sentencing that were not presented for its decision at the bench trial.[14]

The State waived a response.[15]  On May 21, 2008, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as lacking any substantial constitutional question.[16] The record does not show Prieto as having sought a writ of certiorari from the United States Supreme Court or having sought post-conviction relief in the state courts.

**C.      Federal habeas petition**

On July 8, 2008,[17] Prieto, *pro se*, timely[18] filed the instant habeas petition, asserting the following three grounds for relief:

---

[14] ECF # 6 at 6.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] The Ohio Supreme Court declined discretionary review on May 21, 2008. The conviction became final 90 days later; and Prieto filed this petition on July 7, 2008.

1.     CONVICTION OBTAINED BY INSUFFICIENT EVIDENCE

**Supporting facts:** Petitioner was denied his state and federal constitutional rights to due process and a fair trial when the trial court at a bench trial, after wondering aloud whether to believe the only eyewitness to an alleged felonious assault, and stated the "trouble" and "doubt" in the State's case, entered a judgment of conviction against Petitioner in the absence of sufficient evidence to support the conviction.

2.     CONVICTION OBTAINED BY INEFFECTIVE ASSISTANCE OF COUNSEL

**Supporting facts:** Petitioner was deprived of the right to the effective assistance of trial counsel, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution, where his trial counsel failed to call available alibi witnesses and denigrated his client at the sentencing.

3.     DENIAL OF DUE PROCESS RIGHTS

**Supporting facts:** The trial court in a criminal trial errs when it mistakenly relies upon facts at sentencing that were not presented for its decision at the bench trial.[19]

## Analysis

**A.     Standard of review**

Pursuant to the Antiterrorism and Effective Death Penalty of 1996 (AEDPA), as codified in 28 U.S.C. § 2254(d), a federal habeas court may not grant an application for a writ of habeas corpus on behalf of a person in state custody pursuant to a judgment of a state court unless one of the following two conditions are met. The state court's adjudication of the petitioner's federal claim must have resulted in a decision that was either (1) "contrary

---

[19] ECF # 1 at 5-8.

to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[20]

A federal court may grant the writ pursuant to the "contrary to" clause if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a case of materially indistinguishable facts.[21]  A federal court may grant the writ pursuant to the "unreasonable application" clause if the state court correctly identified the governing legal principle from the Supreme Court's holdings, but then unreasonably applied that principle to the fact of the petitioner's case.[22]

A mere incorrect application of federal law is insufficient; rather, such an application must rise to the level of not mere incorrectness, but unreasonableness.[23]  The proper inquiry is whether the state court decision was "objectively reasonable," not whether it was merely erroneous.[24]  Finally, the petitioner bears the burden of showing that the state court was objectively reasonable.[25]

---

[20] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).

[21] *Williams*, 529 U.S. at 405-06.

[22] *Id.* at 407-08.

[23] *Id.* at 411. *See also, Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000); *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

[24] *Id.*

[25] *Woodford v. Visciotti*, 537 U.S. 19, 25 (2007).

**B.      Ground one–insufficient evidence–should be denied.  Prieto cannot show that, viewing the evidence in a light most favorable to the State, no rational trier of fact would have found him guilty beyond a reasonable doubt.**

In keeping with the above mentioned standard, the relevant federal law concerning sufficiency of the evidence is found in the decision of *Jackson v. Virginia*.[26]  Here, the Supreme Court held that, in habeas actions challenging the sufficiency of the evidence, the petitioner is only entitled to relief when "it is found that, upon the record evidence adduced at the trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt."[27]  The Court further explained that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[28]

The state appellate court correctly identified the clearly established federal law when it considered this claim:

> Sufficiency is a question of law dealing with whether or not the evidence presented is adequate to support the conviction. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541. In determining sufficiency, the reviewing court evaluates whether any rational trier of fact could find the essential elements proven beyond a reasonable [**9] doubt. *State v. Goff* (1998), 82 Ohio St.3d 123, 138, 1998 Ohio 369, 694 N.E.2d 916. In doing so, the appellate court must view the evidence in the light most favorable to the prosecution. Id.

As explained below, I recommend finding that the state appellate court reasonably applied federal law as found in *Jackson* when it denied Prieto's claim of insufficient evidence.

---

[26] *Jackson*, 443 U.S. 307.

[27] *Id.* at 324.

[28] *Id.*

First, as the state appellate court noted, a rational trier of fact could have easily found Prieto guilty, especially viewing the evidence in the light most favorable to the prosecution. As explained by the state appellate court:

> [V]iewing the evidence in the light most favorable to the state, a reasonable person could find that appellant's identity was proven beyond a reasonable doubt. Ms. McBride knew appellant before the shooting. She saw him approach her house. They looked at each other for a moment. She watched him pull a big gun out from behind his back and fire shots at her. She saw/heard one of those shots hit the glass beside her head. She felt one of the next shots hit her leg. She immediately told her mom in an excited utterance that Leo Prieto shot her. This fact is established through her testimony, her mother's testimony and the unobjected to 911 tape, which bolsters their claim of the victim's immediate identification. Although she may not have repeated this identification to the responding officer as she was bleeding through a hole big enough for the surgeon to put a hand through, she provided the information to the first officer to contact her after she was settled in at the hospital. She later picked appellant's photograph out of an array and identified him at trial as the shooter. . . .

> [Furthermore,] the court did not wholly discredit Lenny Vaughn's testimony when it found appellant not guilty of shooting that house. Notably, Vaughn specifically stated that he did not see appellant shoot his house, nor did he see appellant carrying a gun. Since Ms. McBride saw the two people who shot her brothers' house and appellant was not one of them, the decision to acquit appellant of shooting one house and not the other was not illogical or reversible.[29]

In addition, the trial court also found that some of the evidence Prieto submitted in his defense actually favored the State. Specifically, Prieto's mother testified that her son could not have been the shooter because he was talking to her on the phone at the time of the shooting and told her that he was out of the way. However, the trial court stated, "What is significant to me, assuming that conversation took place, is that when she finally got a hold

---

[29] ECF # 6 at 16-17.

of her son, she asked where are you, and he said I'm out of the way. I don't know why he would have said that because nothing was said about the shooting or war zone."[30]

Prieto argues that the evidence was insufficient because the testimony of McBride, the victim, was "equivocal" and because the credibility of some aspects of eyewitness Vaughn's testimony was questioned by the court.[31]   These assertions, however, do not establish that, when viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

First, the facts as found by the appellate court establish that McBride unequivocally identified Prieto on three different occasions: in an excited utterance immediately after being shot, in a telephone conversation with the detective, and in an array of photographs.[32] Second, simply because the court questioned the credibility of some aspects of Lenny Vaughn's testimony does not imply that the court must completely disregard every statement made by Vaughn.  Failing to conclude beyond a reasonable doubt that Prieto fired his gun into Vaughn's residence – which the other two suspects could have easily fired their guns at – does not imply that Prieto was not there or that he did not fire his gun into McBride's

---

[30] Tr. at 379, Bates No. 579.

[31] ECF # 1 at 9.

[32] ECF # 6 at 16.

residence.[33] The court was entitled to view his testimony as evidence of at least establishing Prieto's presence at the crime scene, especially since Vaughn's description of Prieto generally corroborated the description offered by McBride.[34]

Finally, the issue to be resolved is not the exact strength of McBride's testimony or the particular weight given to Vaughn's testimony.[35]  Instead, the issue, as defined in *Jackson*, is whether, viewing the evidence in the light most favorable to the state, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[36]  To that end, as the appellate court observed, two witnesses placed Prieto at the crime scene, and one of those witnesses identified Prieto in an excited utterance after she was shot and later in a photo array.[37]  In addition, as the state court noted, Prieto's conversation with his mother reveals, if anything, that he was guilty of the crime.[38] Viewing this evidence as the appellate court did, in a light most favorable to the state pursuant to *Jackson*, I

---

[33]  The court may have simply chosen to question Vaughn's apparent lack of memory or lack of observation when he tried to explain exactly where he saw Prieto ("In between the houses – I can't explain it. I truly can't explain it."  Tr. at 154.) or whether Prieto had a gun ("I didn't look. He probably did, but I didn't look that hard."  *Id.* at 158-59.).

[34]  Both identified Prieto as wearing a hoodie and sweat pants that night.  *See*, ECF # 6 at 14.

[35]  In fact, an attack on a witnesses' credibility is viewed as simply a challenge to the quality or weight of the prosecution's evidence and not a cognizable challenge to the sufficiency of the evidence.  *Martin v. Mitchell*, 280 F. 3d 594, 618 (6th Cir. 2002).

[36]  *Jackson*, 443 U.S. at 324.

[37]  ECF # 6 at 16-17.

[38]  *Id.* at 17; Tr. at 379, Bates No. 579.

recommend denying Prieto's first claim on the grounds that the state appellate court reasonably applied *Jackson* in denying this claim.

**C.      Ground two – ineffective assistance of counsel – should be denied.  Prieto cannot show that his counsel failed to function as the "counsel" guaranteed by the Sixth Amendment and that, as a result, his defense was prejudiced.**

The two-part test for ineffective assistance of trial counsel is found in *Strickland v. Washington*:

> (1)     First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
>
> (2)     Second, the defendant must show that the deficient performance prejudiced the defense.  This requires that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[39]

In order to show deficient performance, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.[40]  "[E]very effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[41]  Judicial scrutiny of counsel's performance must be highly deferential; indeed, the court must presume that the challenged action might be considered sound trial strategy.[42]

---

[39] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[40] *Id.* at 688.

[41] *Id.* at 689.

[42] *Bell v. Cone*, 535 U.S. 685, 698 (2002).

Concerning the second prong, the Supreme Court held:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.[43]

Prieto claims that his counsel was ineffective because two alibi witnesses did not offer testimony at trial:  Prieto's wife and mother-in-law.  In addressing Prieto's claim, the state appellate court first correctly identified the two-prong test set forth in *Strickland*:

In seeking reversal for alleged ineffective assistance of trial counsel, the defendant must establish deficient performance which caused prejudice to the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674; *State v. Bradley* (1989), 42 Ohio St. 3d 136, 142, 538 N.E.2d 373. This statement breaks down into a two-pronged test: deficiency and prejudice.

In order to establish that counsel's performance was deficient, the defendant must demonstrate that the performance fell below an objective standard of reasonable representation by the commission of a serious error. *State v. Keith* (1997), 79 Ohio St. 3d 514, 534, 1997 Ohio 367, 684 N.E.2d 47. Counsel is generally presumed competent.  *State v. Thompson* (1987), 33 Ohio St. 3d 1, 10, 514 N.E.2d 407. We do not use hindsight to second-guess instances of trial strategy that backfire as there is a wide range of professional competence and of appropriate trial tactics.  *State v. Carter* (1995), 72 Ohio St. 3d 545, 558, 1995 Ohio 104, 651 N.E.2d 965.

To then demonstrate that he was prejudiced by the deficient performance, the defendant must prove that there exists a reasonable probability that were it not for counsel's errors, the outcome of the proceedings would have been different. *Keith*, 79 Ohio St. 3d at 534.[44]

---

[43] *Strickland*, 466 U.S. at 694.

[44] ECF # 6 at 20.

The state appellate court then concluded that Prieto failed to satisfy both prongs of the *Strickland* test for ineffective assistance of counsel.  As set forth below, I recommend finding that the state appellate court reasonably applied the federal law in *Strickland* in denying Prieto's ineffective assistance of counsel claim.

Concerning the first prong, Prieto cannot show that his counsel was "deficient," *i.e.*, that his representation fell below an objective standard of reasonableness.  As the appellate court observed, sound trial tactics may have supported counsel's decision not to have these witnesses testify.[45]  Concerning Prieto's mother-in-law, the appellate court stated "whether [she] was home or awake and aware at the time appellant was allegedly at her house is unknown.  If she was home and awake, it is also possible that she would have testified that appellant was not at her house."[46]

With regard to Prieto's wife, Prieto's counsel did in fact subpoena her.[47]  She actually appeared to testify but left the courtroom at the separation of witnesses.[48]  Concerning the conduct of Prieto's wife, the court stated, "For all we know, the alibi she was to give was fabricated, and thus, she backed out of the story at the last minute."[49]  Significantly, the court pointed out that the notice of alibi filed August 15, 2006, stated that Prieto was with his wife

---

[45] ECF # 6 at 21.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

in Akron on the night of the shooting.[50]  However, that notice was later amended to state that Prieto was in Youngstown with his wife during the shooting.[51]  It is completely reasonable for a lawyer to abstain from calling a witness whose testimony he believes may be detrimental to his client's defense.[52]  As the state appellate court noted, the lawyer's decision not to have these two people testify may have been a sound trial strategy.[53]  And, as previously mentioned, the court must presume that the challenged action is sound trial strategy.[54]  I recommend finding that the state appellate court reasonably applied *Strickland* in concluding that this presumption was not rebutted and in denying Prieto's claim for ineffective assistance of counsel.

Prieto's failure to satisfy the first prong of *Strickland* is sufficient to dismiss Prieto's claim for ineffective assistance of counsel.  However, even if the first prong were satisfied,

---

[50] *Id.*

[51] *Id.*

[52] *See*, *Strickland*, 466 U.S. at 699.  "[R]espondent's counsel made a strategic choice to argue for the extreme emotional distress mitigating circumstance and to rely as fully as possible on respondent's acceptance of responsibility for his crimes. . . .  Counsel's strategy choice was well within the range of professionally reasonable judgments, and the decision not to seek more character or psychological evidence than was already in hand was likewise reasonable.  Respondent had already been able to mention at the plea colloquy the substance of what there was to know about his financial and emotional troubles. Restricting testimony on respondent's character to what had come in at the plea colloquy ensured that contrary character and psychological evidence and respondent's criminal history, which counsel had successfully moved to exclude, would not come in.  On these facts, there can be little question, even without application of the presumption of adequate performance, that trial counsel's defense, though unsuccessful, was the result of reasonable professional judgment."

[53] ECF # 6 at 21.

[54] *Michel v. State of Louisiana*, 350 U.S. 91, 101 (1955).

Prieto cannot satisfy the second prong by showing there is a reasonable probability that the proceeding would have been different. The trier of fact was under no obligation to believe the testimony of these witnesses.  Indeed, as the appellate court observed, the fact that the alibi notice initially said Prieto was with his wife in Akron but was then amended to say Youngstown, combined with the fact that his wife left the courtroom at the separation of witnesses, might even imply that Prieto's lawyer or Prieto's wife (or both) believed that such testimony would be futile, or possibly even incriminating.[55] I, therefore, recommend finding that the appellate court was reasonable in explicitly finding that nothing on the record indicates Prieto was prejudiced because his wife and mother-in-law did not testify.[56]

Prieto briefly states that his lawyer "denigrated" him at sentencing.[57]  However,  he offers absolutely no explanation in his habeas petition to how such "denigration" occurred.[58] A completely bare assertion that he was "denigrated" is not enough to establish that his lawyer's conduct at sentencing rose to the level of violating an objective standard of reasonableness that prejudiced the state court proceedings.

Finally, in his argument for ineffective assistance of counsel in his habeas petition, Prieto has asserted certain factual claims that have not been presented to state appellate

---

[55] ECF # 6 at 21.

[56] *Id.* "The appellate court addressing a direct appeal is not permitted to add matter to the record which was not part of the trial court proceedings[, and w]e have no recorded evidence of deficiency or prejudice."

[57] ECF # 1 at 6.

[58] *See*, ECF # 1.

courts.   Specifically, he claims that his counsel was also ineffective because he did not request a suppression hearing, did not allow Prieto to proceed with a jury trial, did not move for a dismissal based on a violation of Prieto's speedy trial rights, and did not display the appropriate demeanor in handling Prieto's case.[59]   Because Prieto failed to present these claims in state courts, he cannot now raise them here for the first time.   "Federal courts lack jurisdiction to consider a habeas claim that was not fairly presented to the state courts."[60]   It is not enough that these new factual claims fall under the same general title of "ineffective assistance of counsel;" the same claim under the same theory must be presented to the state courts.[61]   Prieto's failure to present these claims is considered a waiver, unless Prieto can show cause for the default and actual prejudice from the constitutional error.[62]   As Prieto has offered no explanation for "cause" or "prejudice" with respect to these new factual claims, I recommend finding that these new claims be considered waived.[63]

---

[59] *Id.* at 19.

[60] *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

[61] *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987).   *See also*, *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("A claim may only be considered 'fairly presented' if the petitioner asserted both a factual and legal basis for his claim in state court.").

[62] *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992).

[63] *See also*, *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), which requires petitioner to demonstrate "cause" for not following an applicable state procedural rule that was enforced and that was an "adequate and independent" state ground for foreclosing review of a federal constitutional claim.   Petitioner must then show actual prejudice resulting from this alleged constitutional error.

In conclusion, I recommend finding that the appellate court reasonably applied *Strickland* in denying Prieto's claim for relief based on a lack of testimony from alibi witnesses. I also recommend finding that Prieto's claim of ineffective assistance of counsel based on "denigration" at sentencing be dismissed for failure to state a ground for relief. Finally, I recommend finding that Prieto's new factual claims supporting his argument for ineffective assistance of counsel be considered waived.

**D.** **Ground three – denial of due process rights – should be dismissed or, in the alternative, denied. Prieto has failed to show how using information outside of trial for purposes of sentencing was a violation of clearly established Federal law, as determined by the Supreme Court.**

In this ground, Prieto argues that the trial court referred to facts outside the record during his sentencing in violation of his "due process and other constitutional rights."[64] Prieto bases his argument on the following comment by the judge at sentencing:

> "I am certainly not blind to the fact *based upon the testimony introduced at trial* that this incident is a longstanding one; that the players involved are, unfortunately involved because of cocaine and crack cocaine; that this epidemic has certainly caused a problem in society that is not easily fixed."[65]

Prieto essentially contends that the reference to drugs is not supported by testimony at trial and that the trial judge was, therefore, opining on matters outside the record in violation of his due process and other constitutional rights.

---

[64] ECF # 1 at 20.

[65] *Id.* (emphasis added by Prieto).

I note that Prieto has not shown what clearly established federal law is purportedly violated by a trial judge simply referring to a fact outside the record[66] when imposing a sentence otherwise within the statutory limits for the crime.  Although Prieto has alleged his due process rights were violated, a general allegation of the denial of "due process" does not fairly present a claim that a federal constitutional right was violated.[67]  Indeed, if there is no "clearly established federal law" supporting a petitioner's claim, that claim must be denied.[68]

Prieto here has not shown, or even alleged, that any clearly established federal law was violated by the state judge making reference to drug involvement while imposing an

---

[66] Factually, the State makes plain that knowledge of this crime taking place in a drug environment was in the record.  It had been introduced into this case by Prieto as part of a strategy to ameliorate his sentence.  In brief, the approach, as noted by the state appeals court, was to portray Prieto as a "reformed drug dealer, who had stayed out of trouble since his 2002 arrest." (*See*, ECF # 6 at 23, quoting the state appeals court opinion).  The appellate court decision observed that this information about the crime taking place in a drug environment, far from being outside the trial record, was in the record by way of: (1) the pre-sentence report which revealed "numerous arrests, and many convictions, some for drug offenses" on Prieto's record (*id.*); (2) Prieto's own statement at sentencing that his circumstance was "a case of my past coming back to haunt my future" (*id.*); and (3) a letter written by Prieto to the judge that, according to the appeals court, "seemed to invoke this strategy [of a former drug dealer gone straight]" (*id.*).  Although this habeas claim will be analyzed and resolved without needing to consider if Prieto's factual premise is correct, it should be noted that it is not.

[67] *Fulcher*, 444 F.3d at 798.

[68] *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005).

otherwise lawful sentence.[69]  Moreover, there is no factual allegation that the judge's stated

awareness of drug involvement in the context of the crime at issue impermissibly altered the

otherwise admittedly lawful sentence in any way, or that Prieto was actually prejudiced in

any other particular fashion by this comment.  As such, because Prieto's failure to even

allege any particular federal law purportedly violated in this instance, I recommend that

ground three be denied.

## Conclusion

For the foregoing reasons, I recommend that the petition for a writ of habeas corpus

filed by Leo Prieto be denied with respect to grounds one and two.  With respect to ground

three, I recommend it be dismissed or, in the alternative, denied.

Dated:   August 4, 2009                         s/ William H. Baughman, Jr.
                                                United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within ten (10) days of receipt of this notice.  Failure to file objections within the
specified time waives the right to appeal the District Court's order.[70]

---

[69] Concerning what a judge may consider during sentencing, clearly established
federal law has long held to the contrary of Prieto's assertion. As the Supreme Court in
*Williams v. Oklahoma*, 358 U.S. 576, 584 (1959), stated: "[T]he sentencing judge ... is not
restricted to evidence from the examination and cross-examination of witnesses in open court
but may, consistent with the Due Process Clause of the Fourteenth Amendment, consider
responsible unsworn or 'out-of-court' information relative to the circumstances of the crime
and to the convicted person's life and characteristics."

[70] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v.
Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).