UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LEO PRIETO,** | ) | **CASE NO.  4:08CV01631** |
| | ) | |
| PETITIONER, | ) | **JUDGE SARA LIOI** |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **RICH GANSHEIMER,** | ) | |
| **WARDEN,** | ) | |
| | ) | |
| RESPONDENT. | ) | |

This matter is before the Court on the petition of petitioner Leo Prieto ("Prieto") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Magistrate Judge William H. Baughman, Jr. filed a Report and Recommendation ("R&R") recommending that the petition be denied with respect to grounds one and two and that ground three be dismissed, or, in the alternative, denied. (Doc. No. 9.) Prieto filed Objections to the R&R. (Doc. No. 11.) Respondent Warden Rich Gansheimer ("Respondent") has not filed a response. Having reviewed *de novo* those portions of the R&R which have been properly objected to, *see* FED. R. CIV. P. 72(b)(3), for the reasons set forth below, the R&R is **ACCEPTED** and this petition is **DISMISSED**.

### I.   FACTUAL AND PROCEDURAL HISTORY

On October 5, 2006, at a bench trial in the Mahoning County Court of Common Pleas, Prieto was convicted of felonious assault, improperly discharging a firearm into a habitation, and two accompanying firearm specifications. (Doc. No. 1 at 1.) On January 5, 2007, Prieto was sentenced to eight years on the charge of felonious assault and eight years on the

charge of discharging a firearm into a habitation with the sentences to be served concurrently. As to the firearms specifications, Prieto was sentenced to two additional three-year terms to be served concurrently with regard to each other, but consecutively with regard to the eight year sentences, for a total term of incarceration of eleven years. *Id.* Prieto appealed to the Ohio Court of Appeals which denied his appeal on December 21, 2007. *State v. Prieto*, No. 05CR497, 2007 WL 4696815, at *1-*3 (Ohio Ct. App. Dec. 21, 2007). The Ohio Supreme Court denied Prieto leave to appeal on May 21, 2008. *State v. Prieto*, 886 N.E.2d 872 (Ohio 2008) (Table).

On July 8, 2008, Prieto filed a petition of habeas corpus pursuant to 28 U.S.C. § 2254 asserting three grounds for relief: (1) insufficient evidence at trial to support a conviction; (2) ineffective assistance of counsel; and (3) a violation of due process at sentencing. (Doc. No. 1 at 5-6, 8.) On August 4, 2009, the Magistrate Judge recommended that the petition be denied as to grounds one and two, and that ground three be dismissed, or, in the alternative, denied. (Doc. No. 9 at 2.) Prieto filed objections as to all three grounds of relief. (Doc. No. 11.)

The state appellate court reviewing Prieto's conviction described the facts as follows:

> On May 18, 2005 at nearly 1:00 a.m., the residences at 1341 and 1343 Berwick Avenue on the East Side of Youngstown were subjected to a barrage of gunfire from assault rifles. Sixteen-year-old Shylinda McBride was shot once through her lower leg, requiring surgery to repair bone. She resided at the 1341 address with her mother and grandmother while two of her brothers lived next door at the 1343 address.
>
> Based on the victim's statement that Leo Prieto shot her, appellant was indicted for one count of felonious assault, two counts of improper discharge of a firearm into a habitation (one for each residence), and three gun specifications. Also charged were Henry Scott and Lamont Williams. Appellant's case proceeded to a bench trial on October 3, 2006.
>
> Ms. McBride testified that she was sitting in the living room listening to music and studying for a test when the broken front door blew open. When she got up to close it, she looked over towards her brothers' house next door. She saw a person

2

named Henry Scott and another unknown person holding "big" guns. They were running across the street as they started shooting at her brothers' house. (Tr. 25).

Before ducking back into her house, she looked forward, and in the light of a streetlight, she saw appellant walking across the street. (Tr. 25, 28). She testified that he was wearing a black hooded sweatshirt, black sweatpants and a hat. (Tr. 29). When asked about any unusual characteristics, she stated that appellant has "eyes that go different ways." (Tr. 33-34). She testified that appellant stopped, looked at her strangely, pulled a big gun out from behind his back and began firing at her house. (Tr. 29). She figured he fired approximately fifteen or sixteen shots and that she was hit with the third or fourth shot.

She limped down the hall screaming for her mother and exclaiming that Leo Prieto shot her. (Tr. 31). Her mother called 911 relating that her house was under fire and that her daughter had been shot. When the operator asked the identity of the shooters, the mother answered "Leo Prieto and them." The mother testified confirming that her daughter had immediately stated that Leo Prieto shot her. (Tr. 104). The mother also disclosed that she has known appellant for twenty years as he was once friends with her oldest children. (Tr. 107).

Lenny Vaughn, one of the victim's brothers who lived at the 1343 address, testified that he had received a telephone call earlier that day threatening that his house would be shot up by Leo Prieto and others. (Tr. 131-132). He stated that when he returned home from the store, he was worried because he saw a truck belonging to Lamont Williams in the driveway of Leo Prieto's mother, a few streets over. (Tr. 131, 133). He noted that the truck had not been there when he left for the store.

Mr. Vaughn related that he exited the vehicle in his driveway and spotted Leo Prieto rushing toward the house. (Tr. 134-135). Appellant was said to be wearing a black hooded sweatshirt, black jogging pants and gold eyeglasses. He was said to be dressed just as he had been when Mr. Vaughn saw him earlier that day, except that Mr. Vaughn did not believe appellant was still wearing his hat. (Tr. 155).

Mr. Vaughn ran in the house and yelled for his brother to get the guns. (Tr. 137). He explained that they had pistols for which they had just purchased bullets due to the threat earlier that day. (Tr. 147). Before any guns could be retrieved, gunfire erupted around them forcing them to take cover. (Tr. 137, 160). Mr. Vaughn admitted that he did not tell police that he saw appellant approaching his house until he was negotiating a plea in his own case the next year. (Tr. 164).

The detective assigned to the shooting testified that the victim told him that Leo Prieto shot her the first time he talked to her when he called her in the hospital some hours after the shooting. (Tr. 174, 180). He explained that the victim picked appellant out of a photographic array the next day. He disclosed that the victim was initially hesitant in picking out his photograph, that she kept looking at her mother, and that she finally stated, "but, Momma, you know he shot me." (Tr. 180).

3

> The defense called the patrolman who first responded to the scene. He was dispatched at 12:52 a.m. for the shooting which occurred at 12:50 a.m. (Tr. 212). His report stated that the victim had been walking through the house when she heard gunshots and felt pain in her leg. (Tr. 215). (A paramedic's report had a similar recitation of events. (Tr. 239).) When the responding officer was asked why his report listed the suspect as a black male with black hair around twenty years old, he advised that he made up these characteristics because there are certain fields that must be filled in or the computer will provide an error message. (Tr. 217). He insisted that neither the victim nor the mother advised him of the suspect's name or that the victim was an eyewitness.
>
> Notably, the victim had testified that she did not remember speaking to a police officer on the scene. (Tr. 35). The victim's mother had testified that she barely spoke to the officer as she was too busy seeing her daughter off in an ambulance and assisting her disabled mother who was almost shot in her bed. (Tr. 112). She also implied that she was hesitant to name Leo Prieto due to his status as a long-time family friend.
>
> The defense also called appellant's mother, Donna Copeland, to the stand. She identified her cellular telephone records, which showed that she placed calls to appellant's cell phone numerous times throughout that night/morning. Most calls were one minute long, which she attributed to her hanging up on his voice mail.
>
> Ms. Copeland testified that she heard the gunshots from Berwick Avenue, a few streets over. She immediately called appellant to ensure his safety. Although her records show only a one-minute call to appellant at 12:51 a.m., she stated that she had a conversation with him. He allegedly told her that he heard the gunshots, he was "out the way", he was at his wife's mother's house one street over, and he would see her tomorrow. (Tr. 267-268, 304-305). Ms. Copeland reasoned that appellant could not have been the shooter because she could hear the gunshots in her neighborhood but could not hear any over the telephone while she was speaking to her son. (Tr. 282).
>
> The court took the case under advisement. The next day, the court came on the record and specifically explained its thought process and credibility determinations. The court found appellant guilty of felonious assault, improper discharge regarding the house containing the victim and the two accompanying firearm specifications. However, the court found appellant not guilty of improper discharge regarding the other house. On January 9, 2006, the court sentenced appellant to eight years on each count to run concurrently plus an additional three years for the merged firearm specifications.

*State v. Prieto*, No. 05CR497, 2007 WL 4696815, at *1-*3 (Ohio Ct. App. Dec. 21, 2007).

## II.     STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Law is clearly established only by holdings of the Supreme Court, not its *dicta*, and the law must be clearly established at the time of the petitioner's conviction. *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

A state prisoner must exhaust all available state remedies, or have no remaining state remedies, prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *see Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 935 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context in order to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor,* 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). Federal courts lack jurisdiction to consider any claim that was not fairly presented to the state courts. *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard,* 404 U.S. at 275. The exhaustion requirement is properly satisfied when the highest court in the state in which

5

petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

This Court finds, and Respondent concedes, that Prieto has exhausted his state court appeals at least to the legal substance of his claims.[1] (Doc. No. 6 at 9.) Because Prieto has no remaining state remedies, his petition is properly before this Court.

### III. LAW AND ANALYSIS

In his petition, Prieto raises the following three grounds for relief:

1. CONVICTION OBTAINED BY INSUFFICIENT EVIDENCE

    Supporting Facts: Petitioner was denied his state and federal constitutional rights to due process and a fair trial when the trial court at a bench trial, after wondering aloud whether to believe the only eyewitness to an alleged felonious assault, and stated the "trouble" and "doubt" in the State's case, entered a judgment of conviction against petitioner in the absence of sufficient evidence to support the conviction.

2. CONVICTION OBTAINED BY INEFFECTIVE ASSISTANCE OF COUNSEL

    Supporting Facts: Petitioner was deprived of the right to the effective assistance of trial counsel, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution, where his trial counsel failed to call available alibi witnesses and denigrated his client at the sentencing.

3. DENIAL OF DUE PROCESS RIGHTS

    Supporting Facts: The trial court in a criminal trial errs when it mistakenly relied upon facts at sentencing that were not presented for its decision at the bench trial.

(Doc. No. 1 at 5-8.)

---

[1] Respondent argues that, though Prieto fairly presented these three grounds for a writ of habeas corpus in the state courts as required to exhaust his state remedies, he did not properly raise some of the present arguments in support of his ineffective assistance of counsel claim. (Doc. No. 6 at 9.) This court will discuss this argument in Section III (B), *infra*.

6

A. **Sufficiency of Evidence**

Prieto first objects to the Magistrate Judge's recommendation that his petition be denied as to his first ground for relief, in which Prieto alleges his conviction is not supported by sufficient evidence. A petitioner is entitled to "habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). If evidence as to any element of the crime is so insufficient that no rational trier of fact could have found that element satisfied beyond a reasonable doubt, the court must grant the petition. *Newman v. Metrish*, 543 F.3d 793, 796 (6th Cir. 2008). In making this determination, a court does "not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of [the trier of fact]." *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001) (internal quotation and citation omitted). Finally, this Court must examine the facts "in the light most favorable to the prosecution." *Jackson,* 443 U.S. at 319.

Prieto's convictions both stem from the shooting of Shylinda McBride, who was in her residence at 1341 Berwick Avenue at the time of the crime. Prieto seizes upon the fact that he was charged with two counts of improperly discharging a firearm at or into a habitation, and that the trial judge acquitted him of the second count, which was premised on a shooting into a home at an adjacent residence, 1343 Berwick Avenue. *State v. Prieto*, No. 05CR497, 2007 WL 4696815, at *1 (Ohio Ct. App. Dec. 21, 2007). Specifically, Prieto claims that no rational trier of fact could have found him guilty beyond a reasonable doubt of a shooting into 1341 Berwick Avenue while finding him not guilty of a simultaneous shooting into 1343 Berwick Avenue. (Doc. No. 11 at pp. 8-9.) Further, Prieto claims that the trial judge's expressions of concern as to

the testimony of Shylinda McBride and the credibility of Lenny Vaughn warrant relief as to his insufficient evidence claims. Neither argument is persuasive.

Even assuming *arguendo* that the trial court's verdicts as to the shootings at 1341 and 1343 Berwick Avenue were inconsistent, Prieto's first argument is without merit. A defendant cannot obtain relief by a writ of habeas corpus on the basis of inconsistent verdicts rendered after a state bench trial. *Harris v. Rivera*, 454 U.S. 339, 346 (1981). *See also United States v. Powell*, 469 U.S. 57, 63 (1984) ("where truly inconsistent verdicts have been reached, '[the] most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" (citing *Dunn v. United States*, 284 U.S. 390, 393 (1932)). "[T]he possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest." *Id.* at 65.

Next, *Salgado* prohibits this Court from engaging in a review of the weight of the evidence or an assessment of the credibility of the witnesses in determining whether Prieto's insufficient evidence claim warrants habeas relief. This Court notes that in this case, and unlike in cases where verdicts are reached by a jury, the Court has the benefit of the careful analysis of the finder of fact, as the trial judge explained the rationale underlying his decision on the record. (Tr. at 171-188.) Indeed, Prieto's arguments as to the credibility of Lenny Vaughn and concerns regarding the testimony of Shylinda McBride are flyspecked from the trial judge's careful analysis.

As the Ohio appellate court properly held, "[v]iewing the evidence in a light most favorable to the state, a reasonable person could find that the appellant's identity was proven

8

beyond a reasonable doubt." (Doc. No. 6 at pp. 16.) Shylinda McBride, the victim of the 1341 Berwick Avenue shooting, knew what Prieto looked like prior to the shooting. (Tr. at 29.) Ms. McBride testified she had a moment of eye contact with Prieto while he was on a well-lit street prior to the shooting. *Id.* While she did not identify Prieto as the shooter to the officer who first responded to the scene, she unequivocally identified Prieto on at least three other occasions. First, "within seconds after the shooting," in an excited utterance, "Shylinda [told] her [mother], 'Leo shot me, Leo Prieto shot me.'" (Tr. at 104-06, 381.) Next, Shylinda identified Prieto as the shooter during a telephone conversation with the investigating detective while she recovered in the hospital a few hours after the shooting. (Tr. 174, 180). Finally, Shylinda identified Prieto as the shooter to Detective Martin after Martin showed her a photo array at the hospital. (Tr. at 37, 378.) Moreover, while the trial court expressed some doubt as to weight warranted by Lenny Vaughn's testimony,[2] Vaughn's testimony placed Prieto at the scene of the crime. (Tr. at 136-38.) Finally, as the trial court explained, the testimony of Prieto's mother could reasonably be construed to indicate his involvement in the shooting. (Tr. at 379.)

As stated above, this Court is tasked with determining whether the evidence in the case is such that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 324. As found by the state appellate court and the Magistrate Judge, the evidence in this case clearly satisfies that requirement and is sufficient to sustain a conviction. Neither the trial court's verdict of guilty nor the appeals court decision upholding that verdict were contrary to clearly established federal law or were based on an unreasonable determination of the facts in light of the evidence. Therefore, Prieto's first objection is **OVERRULED** and his first ground for habeas relief is **DENIED.**

---

[2] The trial court has the best perspective on the reliability of the testimony and evidence at trial, and its "determination of fact, and of credibility, are given wide latitude." *U.S. v. Cican*, 63 Fed. App'x 832, 837 (6th Cir. 2003).

B.   **Ineffective Assistance of Counsel**

Prieto next objects to the Magistrate Judge's recommendation to deny his petition for habeas relief based upon his second asserted ground for relief, which states he was denied the effective assistance of trial counsel. Proving ineffective assistance of counsel "is a high burden for a petitioner to satisfy, [and] it is even higher for a petitioner proceeding under the AEDPA." *Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006). In order to succeed on a claim of ineffective assistance of counsel, a petitioner must meet the two prong test as set forth in *Strickland v. Washington,* 466 U.S. 668, 687 (1984). *Strickland* requires that a petitioner both "show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." A showing of deficient performance requires the petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To show prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If either prong of *Strickland* is not present, the petition for relief based upon ineffective assistance of counsel fails. *Id*. at 687.

In determining whether counsel's performance was deficient, a court looks to whether the performance was below an objective standard of reasonableness for an attorney. *Strickland,* 466 U.S. at 688. A court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

"To prevail on the merits of a habeas claim of ineffective assistance of counsel 'it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his

10

case in an objectively unreasonable manner.'" *Zimmerman v. Cason,* Case No. 07-1133, Slip Copy, 2009 WL 3878523 at *3 (6th Cir. 2009) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)). In this case, the state appellate court properly identified the *Strickland* test. *State v. Prieto*, No. 05CR497, 2007 WL 4696815, at *5-*6. Applying the proper standard, that court found that Prieto's claim failed on *both* prongs of *Strickland*. *Id.* at *8. Nothing in the state court's analysis indicates an objectively unreasonable application of the *Strickland* standard to the facts of this case.

Prieto argues that his counsel at trial was ineffective because his attorney (1) failed to call certain alibi witnesses; (2) denigrated him at sentencing; (3) did not request a suppression hearing; (4) did not allow for a jury trial; (5) failed to make a motion to dismiss on the grounds that his speedy trial rights were violated; and (6) conducted proceedings without the appropriate demeanor. (Doc. No. 1 at pp. 6, 19-20.) As to the factual allegations numbered three through six above, these arguments were not presented to the state courts and therefore Prieto has waived his ability to bring them in this petition. *See Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (holding that "[f]ederal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts."); *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (holding that "[t]he doctrine of exhaustion requires that the same claim under the same theory be presented to state courts before raising it in a habeas petition.").

1. *Failure to Call Alibi Witnesses*

Prieto claims that his attorney was deficient due to a failure to "procure two known alibi witnesses to aid in" his defense, namely his mother-in-law, Patricia Martin, and his father-in-law, Edward Carter. (Doc. No. 11 at 9.) Prieto also argues that his trial counsel erred in

11

not calling a subpoenaed alibi witness, his wife, Shamar Prieto, to testify to provide an alibi to rebut the eyewitness identifications of Shylinda McBride and Lenny Vaughn.

While Prieto's trial counsel did not call Shamar Prieto to the stand, there are some possible legitimate strategic reasons for this decision. First, Prieto's original notice of alibi stated that Prieto was in Akron with his wife the night of the shooting. Subsequently, the defense amended that notice to state that Prieto was in Youngstown on the night in question. It may have been a sound trial tactic on the part of Prieto's trial counsel to keep this inconsistency outside the ears of the trial judge. Moreover, as indicated by the state appellate court, "[f]or all we know, the alibi she was to give was fabricated, and thus, she backed out of the story at the last minute." *Id* at *6. The amendment to the alibi notice as well as the fact that Prieto's wife did not testify despite receiving a subpoena, attending the court proceedings, and leaving the courtroom when the trial court ordered the separation of witnesses indicates that there is at least the possibility that counsel believed her testimony would not be helpful to the defense and could possibly be a detriment.

With regard to Prieto's mother-in-law and father-in-law, the state appellate court pointed out that there is no indication as to whether the mother-in-law[3] was even home or awake at the time Prieto claims to have been with her. Further, even "[i]f she was home and awake, it is possible that she would have testified that appellant was not at her house." *Id.* Given this information, a reasonable defense attorney could come to the conclusion that it would be best not to call these particular alibi witnesses. Therefore, there is no indication that the court failed to properly apply the *Strickland* standard when it determined counsel's representation of Prieto was

---

[3] It appears from the state appellate court decision that Prieto did not raise the failure to call his father-in-law as an alibi witness in front of that court. *State v. Prieto*, No. 05CR497, 2007 WL 4696815, at *P33-34. To that extent, this failure precludes consideration of that argument in a petition for federal habeas relief, *see supra.* In any event, Carter's affidavit is identical in all material respects to that of Martin's affidavit.

12

not ineffective.

As for the second prong of *Strickland,* Prieto fails to show that there exists "a reasonable probability that his case would have come out differently." To prevail, Prieto must show that there is a reasonable probability that he would have been found not guilty had counsel procured and called the alibi witnesses. *See Strickland,* 466 U.S. at 694; *White v. McAninch*, 235 F.3d 988, 999 (6th Cir. 2000). While Prieto, in his objection, attaches affidavits from each of the alibi witnesses indicating that Prieto was with them at the home of Martin and Carter at the time of the shooting, these affidavits fall short of demonstrating a reasonable probability that Prieto would have been found not guilty had the witnesses testified consistent with their affidavits. As stated above, Prieto would still be faced with the fact the original notice of alibi filed in this case is completely inconsistent with the story proffered by the alibi witnesses. While there is a possibility that this testimony could have swayed the judge (and fact finder) in this case, Prieto has not met his burden to show "a *reasonable probability* that his case would have come out differently" had the alibi witnesses testified.

A failure to show either prong of *Strickland* means failure of a claim of ineffective assistance of counsel. In this case, Prieto cannot demonstrate either prong, and accordingly, he has not met his "burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner." *Woodford,* 537 U.S. at 25.

2. *Counsel's "Denigration" of Prieto at the Sentencing Hearing*

Prieto also claims that counsel was ineffective because his attorney "denigrated" him during the sentencing hearing. (Doc. No. 1 at 6.) Specifically, Prieto points to the following statements by his attorney:

13

> What to say about Leo Prieto? The man, the myth, the legend. Everybody on the eastside of Youngstown knew Leo Prieto, they knew him from his days in the street. They knew he was tough, they knew he had a family; they knew he had been involved in crimes. [* * *] I don't think any body really wants to talk about the 800-pound elephant in the room. But drugs are at the center of this case, drugs and money and revenge. And it's broken every taboo and folkway and moral that we have in society to the point the eastside of Youngstown is called the wild, wild, east where shootouts, unfortunately, are common. I think we heard that from witnesses on both sides of this case. It's like living in Beirut or Baghdad listening to gunfire all the time.

(Doc. No. 7, Ex. 4 at 6-8). The State appeals court dispensed with this argument noting that "counsel did not blame the common gunfire on the East Side on [Prieto]; nor did counsel compare him to those that create the destruction in Iraq." *State v. Prieto*, No. 05CR497, 2007 WL 4696815, at *7. The court further pointed out that counsel only mentioned crimes that were already within the knowledge of the court in the presentence investigation report. *Id.* Finally, the state court of appeals determined that the language Prieto complains of was counsel's attempt to create a context for the events of the case. *Id.* The fact that Prieto maintained his innocence at the sentencing hearing was also relevant as the picture that the attorney painted gave an underlying reason as to why Prieto may have been falsely accused. *Id.*

There is nothing in the record to indicate that counsel's performance at sentencing fell below the objective standard of reasonableness necessary to show ineffective assistance of counsel. Counsel's argument at sentencing was part of a strategy based around Prieto's continued claims of innocence. Prieto himself stated at his sentencing that this was "a case of [his] past coming back to haunt [his] future." (Doc. No. 7, Ex. 4 at 13.) Defense counsel did nothing more than illustrate that past to show that it would be plausible that Prieto's prior actions and reputation as an outlaw caused the witnesses to falsely identify him. The Ohio court of appeals properly applied *Strickland* as it found no failure on the part of counsel to meet the minimum standards of performance.

14

As discussed above, by not properly presenting his remaining claims to the state courts, Prieto waived his ability to raise those allegations of ineffective assistance of counsel, namely counsel's failure to request a suppression hearing, to move to dismiss on speedy trial grounds, to proceed with a jury trial, and to conduct himself with the appropriate demeanor. Therefore, Prieto's second objection is **OVERRULED** and his second ground for habeas relief is **DENIED.**

C.   **Denial of Due Process Rights**

Prieto next objects to the Magistrate Judge's recommendation to deny his petition for habeas relief based upon his third asserted ground for relief, denial of due process rights. Prieto argues that the trial court denied him his due process rights by relying on facts outside the record during sentencing. Specifically he argues that the court's bias was evident when it made the following statements during the sentencing hearing:

> I am certainly not blind to the fact based upon the testimony introduced at trial, that this incident is a long standing one; that the players involved are, unfortunately involved because of cocaine and crack cocaine; that this epidemic has caused a problem in society that is not easily fixed.

(Doc. No. 7, Ex. 4 at 16.)

Initially, Prieto has waived his claim of a violation of his due process rights as it was not fairly presented to the state courts. "General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984)). Moreover, even if this ground for relief had been fairly presented to the state courts, it would fail on the merits.

First, there is no clearly established Supreme Court precedent that states that following a bench trial, a judge may not discuss facts outside the trial record during the

15

sentencing hearing. The Supreme Court has ruled that the Sixth Amendment requires that courts respect a defendant's right to trial by jury with regard to any fact that increases the sentence of a crime beyond the statutory maximum. *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000); *See Blakely v. Washington* 542 U.S. 296 (2004). However, these cases do not apply here because Prieto does not allege that the judge relied on these facts to increase the sentence beyond the statutory maximum. Moreover, to the extent Prieto alleges he was denied his right to a trial by jury, Prieto waived this right by consenting to a bench trial. Because there is no "clearly established federal law" in support for this ground of Prieto's petition, relief on this ground must be denied. *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005).

Furthermore, from a factual standpoint, all of the facts cited by the trial court were supported by evidence in the record. Indeed, it was Prieto that introduced into the record at sentencing the statement that "drugs are at the center of this case." (Doc. No. 7, Ex. 4 at 6-8). Several witnesses testified to the longstanding relationships between Prieto and those attacked on the night in question. Shylinda McBride knew Prieto well enough to recognize him on the street. (Tr. at 29.) Tahia Mcbride, the victim's sister, noted that she has known Prieto her entire life and that the court should not impose the maximum because there was wrongdoing on both sides. (Doc. No. 7, Ex. 4 at 5.) Linda McBride testified she had known Prieto for twenty years, and that he was once friends with her older children. (Tr. at 107.) These testimonies indicate longstanding relationships between the relevant parties in this case.

Finally, Prieto's criminal history was available in the presentence investigation report. The Ohio court of appeals noted that Prieto had been previously convicted of the following:

> carrying a concealed weapon, inducing panic, possession of marijuana (reduced from aggravated trafficking with a gun specification), possession of drug

16

paraphernalia, drug abuse marijuana two different times, menacing (reduced from intimidation of a witness), conspiracy to felonious assault (involving the co-defendant who fired shots), receiving stolen property (a vehicle), and a later charge for unauthorized use of a motor vehicle.

*State v. Prieto*, No. 05CR497, 2007 WL 4696815, at *9. These past convictions provide a basis in the record for some of the trial court's comments as well as providing a legitimate ground for a lengthier sentence. There is nothing that indicates a failure on the part of the state court to properly apply clearly established Supreme Court precedent in this case. Therefore, this Court must deny Prieto's petition as to this ground.[4] Therefore, Prieto's first objection is **OVERRULED** and his third ground for habeas relief is **DENIED.**

## IV. CONCLUSION

For all of the foregoing reasons, Prieto's objections to the Magistrate Judge's Report and Recommendation are **OVERRULED.** The Magistrate Judge's Report and Recommendation (Doc. No. 9) is **ACCEPTED**, and the petition for a writ of habeas corpus (Doc. No. 1) is **DENIED**. This Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from the decision would be frivolous and could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); FED. R. APP. P. 22(b). This action is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: April 1, 2010

                                                   **HONORABLE SARA LIOI**
                                                   **UNITED STATES DISTRICT JUDGE**

---

[4] The Magistrate Judge alternatively recommended that the third ground for the petition be dismissed because of the vagueness of the allegation of a violation of Prieto's due process rights. Although general allegations of the denial of a "fair trial" or "due process" have been held insufficient to "fairly present" federal constitutional claims, a petitioner need not recite "book and verse on the federal constitution." *Newton*, 349 F.3d at 877 (quoting *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (internal citation omitted). The Magistrate Judge was correct in questioning the validity of the claims made in this case given these grounds. Given the facts and circumstances of this case, however, this Court sees fit to dispense the claim based on the substantive argument made by Prieto.